AMERICAN AUTO TRIMMING CO. AND SUBSIDIARIES,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3430.  Promulgated April 25, 1927.

1. The petitioners *held* not to be affiliated for 1918 and 1919.

2. The claim of one of the petitioners against the Saxon Motor Car Co. was assigned to its principal stockholder in 1918 or 1919, and was reassigned to the principal stockholder in 1919. *Held,* that such corporation sustained no loss from the assignment of its claim in 1918 or 1919.

*George R. Jackson, Esq.,* and *George E. H. Goodner, Esq.,* for the petitioners.

*J. Harry Byrne, Esq.,* for the respondent.

[1] Kolb-Gotfredson Horse Co., Detroit, Mich.; American, Auto Trimming Co., Detroit, Mich.; Gotfredson Land Co.; Kolb-Gotfredson Realty Co.; American Auto Trimming Co., Cleveland, Ohio.

This is a proceeding for the redetermination of deficiencies in income and profits tax as follows:

Petitioners contend that the Commissioner erred (1) in refusing to allow the American Auto Trimming Co., Detroit, Mich., and four associated companies to file consolidated returns for the years 1918 and 1919, and (2) in refusing to allow a deduction from the gross income of 1918 of an alleged loss on the sale of a note by one of the companies during that year. At the hearing of the appeal the petitioners moved to withdraw their appeal so far as it related to the years 1917 and 1920 and such withdrawal has been allowed by order of the Board.

### FINDINGS OF FACT.

The five corporations involved in this appeal are the Kolb-Gotfredson Horse Co., Detroit, Mich., hereinafter referred to as the Horse Company; the American Auto Trimming Co., Detroit, hereinafter referred to as the Detroit Company; the Gotfredson Land Co., hereinafter referred to as the Land Company; the Kolb-Gotfredson Realty Co., hereinafter referred to as the Realty Company; the American Auto Trimming Co., Cleveland, Ohio, hereinafter referred to as the Cleveland Company.

The Horse Company was incorporated in Michigan in 1905 with a capital stock of $150,000. Its business during the taxable years was selling horses, vehicles, harness, etc., and holding and renting real estate. The Detroit Company was incorporated November 23, 1909. Its business is the manufacture and sale of automobile parts and bodies. The Land Company was incorporated in Michigan, in 1913, with a capital stock of $100,000 divided into 10,000 shares. Its business was dealing in real estate. It became inactive after operating for a few years but was revived and its stock reissued on July 1, 1918. The Realty Company was incorporated in Michigan, in 1914, with a capital stock of $25,000 divided into 2,500 shares. Its business was owning and dealing in real estate. The Cleveland Company was incorporated in Ohio, in 1916. Its business during the taxable years was the same as that of the Detroit Company.

The stockholdings of the various companies for the years 1918 and 1919 and the changes in stockholdings during those years were as follows:

| Stockholders. | Dec. 31, 1917. | | Dec. 31, 1918. | | Dec. 31, 1919. | | Changes. |
|---|---|---|---|---|---|---|---|
| | Shares. | Per cent. | Shares. | Per cent. | Shares. | Per cent. | |
| *Kolb-Gotfredson Horse Co.* | | | | | | | |
| Benj. Gotfredson | 462 | 30.80 | 1,498 | 99.87 | 1,498 | 99.87 | 1,036 shares transferred to |
| M. H. Coleman | 23 | 1.53 | 1 | .06 | 1 | .06 | Benj. Gotfredson on July 2, |
| Robert B. Gotfredson | | | 1 | .07 | 1 | .07 | 1918; 1 share transferred to |
| Jacob Kolb | 900 | 60 | | | | | Robert B. Gotfredson on |
| Ed. Busher | 115 | 7.67 | | | | | July 2, 1918. |
| Total | 1,500 | 100 | 1,500 | 100 | 1,500 | 100 | |
| *American Auto Trimming Co.—Detroit* | | | | | | | |
| Benj. Gotfredson | 7,500 | 50 | 7,500 | 50 | 7,500 | 50 | |
| Frank H. Joyce | 3,750 | 25 | 3,750 | 25 | 3,750 | 25 | |
| Lawrence Gotfredson | 2,400 | 16 | 2,400 | 16 | 2,400 | 16 | None. |
| M. H. Coleman | 450 | 3 | 450 | 3 | 450 | 3 | |
| Robert B. Gotfredson | 450 | 3 | 450 | 3 | 450 | 3 | |
| Mary Gotfredson | 450 | 3 | 450 | 3 | 450 | 3 | |
| Total | 15,000 | 100 | 15,000 | 100 | 15,000 | 100 | |
| *Gotfredson Land Co.* | | | | | | | |
| Benj. Gotfredson | | | 8,600 | 80 | 7,000 | 70 | 4,000 shares issued to Benj. |
| M. H. Coleman | | | 1,000 | 10 | 1,000 | 10 | Gotfredson July 1, 1918; 500 |
| Robert B. Gotfredson | | | 1,000 | 10 | 1,000 | 10 | to M. H. Coleman July 1, |
| Mary Gotfredson | | | | | 1,000 | 10 | 1918; 500 to Robt. B. Got- |
| Total | | | 10,000 | 100 | 10,000 | 100 | fredson July 1, 1918; 4,000 to Benj. Gotfredson Dec. 31, 1918; 500 to M. H. Coleman Dec. 31, 1918; 500 to Robt. B. Gotfredson Dec. 31, 1918; and 1,000 shares transferred from Benj. Gotfredson to Mary Gotfredson on June 20, 1919. |
| *Kolb-Gotfredson Realty Co.* | | | | | | | |
| Benj. Gotfredson | 770 | 30.8 | 2,498 | 99.92 | 2,498 | 99.92 | 1,728 shares transferred to |
| M. H. Coleman | 38 | 1.52 | 1 | .04 | 1 | .04 | Benj. Gotfredson on July 2, |
| R. B. Gotfredson | | | 1 | .04 | 1 | .04 | 1918; 1 share transferred to |
| Jacob Kolb | 1,500 | 60 | | | | | Robert B. Gotfredson on |
| Ed. Busher | 192 | 7.68 | | | | | July 2, 1918. |
| Total | 2,500 | 100 | 2,500 | 100 | 2,500 | 100 | |
| *American Auto Trimming Co.—Cleveland* | | | | | | | |
| Benj. Gotfredson | 265 | 53 | 265 | 26.5 | 265 | 26.5 | Additional 500 shares |
| Frank H. Joyce | 125 | 25 | 125 | 12.5 | 125 | 12.5 | issued to American Auto |
| M. H. Coleman | 5 | 1 | 10 | 1 | 10 | 1 | Trimming Co., Detroit, Jan. |
| Robert B. Gotfredson | 25 | 5 | 25 | 2.5 | 25 | 2.5 | 18, 1918; 5 shares transferred |
| Mary Gotfredson | 25 | 5 | 25 | 2.5 | 25 | 2.5 | from employee to M. H |
| Employees (several) | 25 | 11 | 50 | 5 | 50 | 5 | Coleman on Oct. 1, 1918 |
| American Auto Trimming Co., Detroit | | | 500 | 50 | 500 | 50 | |
| Total | 500 | 100 | 1,000 | 100 | 1,000 | 100 | |

About the year 1905, Benjamin Gotfredson and his father-in-law, one Kolb, owned and conducted a small livery business in Detroit under the name of Kolb-Gotfredson Horse Co. It sold horses, carriages, harness, etc. In the course of its business the Horse Company acquired various parcels of real estate which advanced rapidly in value. This demonstrated that real estate judiciously handled would show a very good return on capital invested. The Horse Company occupied an extensive building, part of which was rented to a

concern which started an auto trimming business. The venture, however, was not a success. Gotfredson believed that auto trimming would prove a successful business venture and acquired the business of the concern occupying a part of the building of the Horse Company, and, in 1909, incorporated the Detroit Company. In 1913 and 1914, Gotfredson incorporated the Land Company and the Realty Company, and inasmuch as the Detroit Company engaged in the auto trimming business proved to be a great success, he caused the Cleveland Company to be incorporated in 1916, to do a similar business in Ohio.

A few years after the Horse Company was incorporated Gotfredson bought out Kolb's interest in the Horse Company and was always thereafter the principal stockholder in all of the companies involved herein.

When Gotfredson organized the Detroit Company he permitted one Frank H. Joyce to become a stockholder therein. Joyce first invested $1,600 and later was permitted to acquire additional amounts of stock. He entered the employ of the Detroit Company in 1912, and remained with it until 1922. He had formerly been a salesman of leather goods and was employed by the Detroit Company because of his knowledge of the materials used in the automobile trimming business. During the taxable years Joyce owned 25 per cent of the stock of the Detroit Company and 12½ per cent of the stock of the Cleveland Company. He had the absolute right to vote his stock and he never gave to Gotfredson any proxy with respect thereto. While Gotfredson made a trip to Europe in 1922, Joyce had much to do with the management of the Detroit Company. Upon his return Gotfredson was displeased with his management and discharged him. About one year later Gotfredson acquired his stock in the Detroit and Cleveland Companies.

M. H. Coleman, another employee of the company, was permitted to acquire a small amount of stock of the Detroit Company. He invested no money of his own at the beginning. Coleman was bookkeeper for all five companies during the years 1918 and 1919 and owned a small amount of stock in each. All of his stock was held by Benjamin Gotfredson, whom he owed during the taxable years for a part of the purchase price.

Robert Gotfredson was the son of Benjamin Gotfredson and all of his stock in the different companies was issued in his own name but was held by his father until his marriage in 1922. At that time both the stock and the accumulated dividends thereon were given to him. He took no part in the management of the business during the years 1918 and 1919.

Mary Gotfredson was the wife of Benjamin Gotfredson. Shares of stock were issued in her name but were held by Benjamin Gotfred-

son and never delivered to her. She did not know when or in what manner stock was issued nor did she take any part in the manage- ment of any of the companies.

Lawrence Gotfredson, brother of Benjamin, lived in Wisconsin during the years 1918 and 1919 and took no part in the management of any of the companies during those years.

The other minority stockholders were employees of the several companies who took no part in the management of the business. Certificates for shares of stock owned by such employees were held in some instances by Benjamin Gotfredson.

One office in Detroit served all the companies and they all had the same officers. Benjamin Gotfredson was president and M. H. Coleman was secretary and treasurer of each. No regularly called stockholders' meetings were ever held. The minutes were written up at the Detroit office at the direction of Benjamin Gotfredson and signed by the officers. None of the stock of any of the companies was ever actually voted. Benjamin Gotfredson personally directed the business policies of all the companies. No officer or employee attempted to oppose his will and decision in the management of the companies.

The Horse Company leased space to the Detroit Company at less than its rental value and at less than it could and did lease it to outsiders. The Detroit Company borrowed money and loaned it to the other companies and financed a new building for the Cleveland Company in 1919. The Land Company did not pay interest to the Detroit Company on loans to it. From time to time Benjamin Gotfredson made advances of substantial amounts of money to the various companies. At times the companies borrowed large amounts of money from banks, all of these loans being made by the banks upon the personal endorsement of Benjamin Gotfredson.

The original returns filed for the petitioner corporations for the years 1918 and 1919 were consolidated returns. In the audit of these returns the respondent ruled that the Detroit Company and the Cleveland Company were affiliated within the purview of the law and should file consolidated returns; that the Horse Company and the Realty Company were also affiliated within the purview of the law and should likewise file consolidated returns; and that the Land Company, which was not affiliated with either of the two groups, should file separate returns. The deficiencies for the taxable years in question are based upon the amended returns made by the respondent.

One of the principal customers of the Detroit Company was the Saxon Motor Car Co. The Detroit Company sold large quantities of goods to this company on open account. In 1917 the Saxon Motor Car Co. became financially involved and a creditors' committee was

appointed to take over its business. Benjamin Gotfredson, as president of the Detroit Company; one of the insolvent company's largest creditors, was appointed a member of the committee and later made president of that company. Under direction of the committee, the Saxon Motor Car Co. gave a note to the Detroit Company in the amount of $72,429.76, due and payable November 1, 1917, in full settlement of its account. At the maturity of the note a payment of $7,242.98 was made on the principal and a new note was given for the balance. At the end of 1917, no further payments having been made on the note, the Detroit Company charged off as a loss $36,214.88, 50 per cent of the face value of the original note, and claimed that amount as a deduction from gross income on its income-tax return for 1917.

In auditing the 1917 return the respondent disallowed the deduction of the above-mentioned amount of $36,214.88 and restored the amount thereof to an account receivable.

· During 1918, the Saxon Motor Car Co. plant was leased to the United States Government for war purposes on very favorable terms to the company, which permitted it to make further payments on its indebtedness. During this time the Detroit Company received $14,-485.97 on said note, which brought the unpaid balance down to $50,700.82 and the debit balance on the Detroit Company's books to $14,485.94.

Near the close of 1918, or early in 1919, the Detroit Company assigned the balance of its claim against the Saxon Motor Car Co. in the amount of $14,485.94 to Benjamin Gotfredson in consideration of his payment of $5,000 to the Detroit Company. Benjamin Gotfredson's check for the said $5,000 was received by the Detroit Company on January 18, 1919. In closing its books for the year 1918 the Detroit Company charged off the remaining $9,448.94 of the Saxon Motor Car Co. note as a loss and claimed the deduction of a like amount on its income-tax return for 1918. The respondent disallowed the deduction.

During the year 1919 business conditions improved, and it became evident that the Saxon Motor Car Co. would be able to make further payments on its obligations. Thereupon, in August, 1919, Benjamin Gotfredson reassigned the claim against the Saxon Motor Car Co. to the Detroit Company. Under date of July 15, 1919, Benjamin Gotfredson was credited with $5,135 on the journal of the Detroit Company and notes receivable was debited with a like amount. The explanation of the entry carried by the journal is " For Saxon Motor Car Company notes purchased from Benjamin Gotfredson." Up to July 15, 1919, no further payments had been made on the notes by the Saxon Motor Car Co. In August, and again in September, 1919, the Saxon Motor Car Co. made further payments on the note to the

Detroit Company in the respective amounts of $10,140.16 and $12,-168.20. The unpaid balance on the original claim of $72,429.76 at the end of the year 1919 was $28,392.46. On January 5, 1920, a further final payment of $8,033.77 in cash was made on the note and stock of the par value of $32,300 was received by the Detroit Company. This stock was held until November, 1922, when it was sold through a broker for $2,894.08.

During the years 1918 and 1919, the Detroit Company continued to sell goods in large quantities to the Saxon Motor Car Co. on a cash basis. The sales for the year 1918 amounted to $506,976.06 and for the year 1919 to $234,642.68.

OPINION.

SMITH: 1. The first question presented by this proceeding is whether the petitioner corporations are affiliated within the purview of section 240 (b) of the Revenue Act of 1918, for the years 1918 and 1919. This provides:

For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all of the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.

The Commissioner held that the Detroit Company and the Cleveland Company were affiliated for the years 1918 and 1919 and that the Horse Company and the Realty Company were also affiliated in a separate group for the same years; but that the Land Company was not affiliated with either of the two groups. In the light of the evidence we are of the opinion that the Horse Company, the Realty Company and the Land Company were affiliated during the taxable years.

From January 18, 1918, the Detroit Company owned 50 per cent of the stock of the Cleveland Company but no part of the stock of the other companies. There is no evidence that the Detroit Company had any actual control over the shares of stock which it did not own. To be sure a majority of the stock in each company was owned by Benjamin Gotfredson, president of the Detroit Company, and Benjamin Gotfredson may well be held to be an affiliated interest. We have held, however, in *Appeal of Block Street Wharf & Warehouse Co.*, 2 B. T. A. 183, that where one corporation owned 50 per cent of the stock of another corporation and the president of the first corporation owned the balance of the stock of the second company, that fact alone did not constitute the two corporations affiliated. Similarly we must hold here that the Detroit Company did not own directly or control through closely affiliated interests sub-

stantially all the stock of the other companies so as to constitute an affiliated group.

It remains to be considered whether substantially all the stock of the five companies was "owned or controlled by the same interests." Although there is evidence that the shares of stock held by other stockholders than Joyce were controlled by Benjamin Gotfredson and M. H. Coleman there is no evidence that these individuals had any actual control over the shares of stock standing in the name of Joyce. We are of the opinion that based on percentages alone the ownership or control by Gotfredson and Coleman of substantially all of the stock of the Horse Company, the Realty Company, and the Land Company, but of only 75 per cent of the stock of the Detroit Company, and of between 82½ and 87½ per cent of the Cleveland Company, can not be regarded as substantially all the stock of those companies. *Industrial Co. of Binghamton*, 2 B. T. A. 360; *United Metal Spinning Co.*, 2 B. T. A. 520; *Wadhams & Co.*, 2 B. T. A. 569; *Ullman Manufacturing Co.*, 2 B. T. A. 1294. The test of the statute is ownership or control of substantially all the stock of all of the corporations of the affiliated group by the same "interests." We do not have that situation here. The Detroit and Cleveland Companies were engaged in a business essentially different from those carried on by the other three companies. The fact that Gotfredson had absolute control of the business methods, policies, and relations of all of the corporations is not decisive of the issue. *Appeals of Rishell Phonograph Co.*, 2 B. T. A. 229; *Watsontown Brick Co.*, 3 B. T. A. 85; *Adaskin-Tilley Furniture Co.* v. *Commissioner*, 6 B. T. A. 316. We are of the opinion that the Detroit and Cleveland Companies were affiliated in one group for the years 1918 and 1919, as found by the respondent, and that the Horse Company and the Realty Company were affiliated in another group, and that the Land Company from the date of its organization in 1918, was also affiliated in the same group. Deficiencies should be computed accordingly.

Upon the second point it is contended on behalf of the petitioners that the Detroit Company made a sale of its claim against the Saxon Motor Car Co. in 1918 for $5,000 and sustained a loss of $45,700.82 on the transaction; that from the date of the sale of this claim to Gotfredson there was an appreciation in the value of the claim and that the appreciation in the value from $5,000 to its worth at the time that it was reassigned to the Detroit Company constitutes a paid-in surplus of the Detroit Company and that the Detroit Company realized no income from collections upon the note in the year 1919.

The evidence with regard to this transaction is decidedly unsatisfactory. Gotfredson, who should have a lively recollection with

regard to the transaction if it was bona fide, deposed as follows with respect thereto:

Q. It appears from these pleadings here that the claim of the American Auto Trimming Co. at Detroit against the Saxon Motor Car Co. was purchased by you personally for $5,000. Do you recall that?

A. I remember something about it.

Q. Who fixed the price of $5,000 for that claim?

A. I couldn't remember.

Q. Can you state whether the amount of the claim. was approximately $50,000?

A. No, I couldn't.

Q. Do you recall your assigning the claim back to the American Auto Trimming Co., and getting your $5,000?

A. No, I don't remember. You see Mr. Coleman is the secretary and treasurer, and it was just kind of an every day occurrence what I would sign and what I would do. I don't remember.

Q. That is what I am asking you, Mr. Gotfredson. Wouldn't the amount of $5,000 be fixed by you, and not by some subordinates?

A. It would naturally be agreed to by me, if I gave a check for it or paid for it.

Q. Wouldn't you be the one who would set the price?

A. I would not say that. It might be, and it might not.

Q. Did you take over that claim just for convenience, because you were in close connection with the Saxon Motor Car Co., and could handle it for your own company to advantage?

A. I could not remember the details.

It is further to be noted that there is no satisfactory evidence as to whether the note was assigned to Gotfredson in 1918 or in 1919. The deposition of M. H. Coleman, secretary and treasurer of the Detroit Company, upon this point was in part as follows:

Q. (By Mr. Doyle) What was the date of the sale of the Saxon Motor Car Co. claim to Mr. Gotfredson?

A. Sometime in December of 1918, I don't remember the exact date. I think I testified to it this morning.

Q. Was the money paid at that time?

A. He paid the money in January of 1919, he paid the company the money. Do you mean that?

Q. Yes, that is what I mean, the time that he bought the claim.

A. He paid the company January 1st, 1919, or in January of 1919, I do not just remember the date.

Q. Why do you say that the sale was made in 1918?

A. Because that is when it was made.

Q. Was there a contract drawn up in connection with it?

A. No, I do not think there was a contract drawn up. It was for closing the books that that sale was made.

Q. When would you close the books?

A. The books were closed at the end of the year, that is, as of the end of the year.

The petitioners have not shown that any loss on account of the sale of the note was actually sustained during either of the years 1918 or 1919.

> *Judgment will be entered on 15 days' notice, under Rule 50.*